**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEVIN NOTARNICOLA,

     Plaintiff,

                                Case No. 12-11331

v.

                              HONORABLE DENISE PAGE HOOD

JOHNSON CONTROLS INC.,

     Defendant.

_____/

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND**
**SCHEDULING ORDER**

## I.    BACKGROUND

Plaintiff Kevin Notarnicola ("Notarnicola") filed the instant action against

Defendant Johnson Controls, Inc. ("Johnson Controls") on March 26, 2012 alleging:

Violation of the Americans with Disabilities Act ("ADA"), Disability Discrimination-

Failure to Accommodate (Count I); Violation of the ADA, Disability Discrimination-

Termination (Count II); Violation of the ADA, Disability Discrimination-Hostile

Work Environment (Count III); Violation of the ADA, Disability Discrimination-

Retaliation (Count IV); Violation of Michigan's Persons with Disabilities Civil Rights

Act ("PWDCRA"), Disability Discrimination-Failure to Accommodate (Count V); Violation of the  PWDCRA, Disability Discrimination-Termination (Count VI); Violation of the PWDCRA, Disability Discrimination-Hostile Work Environment (Count VII); and, Violation of the PWDCRA, Discrimination-Retaliation (Count VIII).

Notarnicola, nicknamed "Smiley," was hired by Johnson Controls as a Groundskeeper/Laborer at the GM Proving Grounds in Milford, Michigan on June 9, 2002.  Notarnicola is an individual with disabilities including, ADHD, dyslexia and developmental language deficit called evasive developmental disorder.  Notarnicola's deficits in verbal communications are noticeable.  He has difficulty in expressing his thoughts and often takes a long time to express himself.  Notarnicola reported to supervisor Michael Stephens ("Stephens") and lead David Jackson ("Jackson"). Jackson was responsible for the laborers, including designating job assignments and acting as the first line supervisor.

Notarnicola asserts that for years, Jackson and Stephens brutally harassed Notarnicola because of his disabilities.  In 2010, Stephens predicted that within six months, Notarnicola would quit or be terminated.  Notarnicola claims that throughout 2010, he was routinely subjected to taunts, name-calling, threats of violence, dangerous and undesirable assignments, unfair scrutiny and unwarranted write-ups.

2

Jackson was responsible for the majority of the daily harassment, but Stephens' demanding treatment of Notarnicola sent a clear message that such conduct was permissible, according to Notarnicola.  Despite the harassment, both Stephens and Jackson confirmed that Notarnicola was a hard worker whose performance was not a concern.  Notarnicola was denied a pay promotion to Laborer III classification, despite his seniority and excellent performance record.  Notarnicola confided in his peers, union representative and physician regarding the disrespectfulness and unfair treatment by his supervisors.  In December 2010, Stephens detailed a conversation with Notarnicola in a JCI Communication Record suggesting that Notarnicola might be undergoing some type of mental health issue and that he might become violent in some way or that he could possibly hurt himself, his fellow employees or customers in some manner.

Michael Brown ("Brown") was named as Business Representative to the GM Proving Grounds unit by Local 1076 in late October 2010.  Brown discovered in November 2010 that the laborers' main concern was the harassment of Notarnicola.  Brown held various meetings in December 2010 where he collected reports outlining the specifics of the harassment.  On December 9, 2010, Brown contacted Johnson Controls' Human Resources Manager Paige Boyett ("Boyett") at her office in Texas, reporting the disability harassment of Notarnicola.  Boyett denied having any contact

3

with Brown until January 19, 2011, but Brown's telephone records show that on December 9, 2010, there was a 37 minute call with Boyett. Boyett informed Brown that she would investigate the harassment complaint and interview the laborers.

Between December 9, 2010 and January 19, 2011, Boyett did not take any actions on Brown's harassment complaint on behalf of Notarnicola. Notarnicola asserts that Boyett engaged in deceptive and irregular actions to cover up her lack of follow through on the harassment complaint, distorting the record to make Notarnicola look like a problem employee. Boyett contacted Brown in mid-December 2010 indicating she had read Notarnicola's employment file and suggested he was a problem employee. Brown responded that any discipline would not be credible because the discipline was issued by the harassing managers and was part of the pattern of harassment that Notarnicola suffered. Brown requested again that Boyett interview the laborers.

On January 19, 2011, a meeting was held with Notarnicola, Brown, Stephens, with Boyett via speaker phone. Stephens began the meeting by asking Notarnicola about an incident six weeks earlier where Notarnicola indicated to Stephens that he felt like he was working under a dark cloud and people were calling him a child molester. Notarnicola had difficulty responding and articulating the events from the prior six weeks. Notarnicola finally responded, stating, "I'm not a child molester, I'm

4

not like those people, I would never be like one of those people ... I could kill someone like that, I don't like those people." (Brown Dep. at 179, 183)  Notarnicola was upset and then got up from his chair, placed his hands on the conference room door and hit his head.  Brown escorted Notarnicola from the meeting room to collect himself.  The meeting was thereafter adjourned.

Brown indicated that he and Stephens conferred on what had just occurred, determining that Notarnicola was not threatening anybody but was just attempting to explain how deeply he disliked people who hurt children.  Stephens indicated that he did not perceive Notarnicola to be a danger or potential danger in the workplace.  Pursuant to security protocol at Johnson Controls, since Notarnicola expressed a desire to hurt someone, Stephens took Notarnicola to a clinic.  No treatment was administered to Notarnicola at the clinic, who was immediately released into the custody of his parents.  A medical leave of absence was approved without pay for purposes of treatment and securing a fitness for duty evaluation on Notarnicola.

The day after, on January 20, 2011, Stephens told Brown that Notarnicola was a danger to himself and his co-workers because he had hit the door with his head.  Stephens mentioned that Notarnicola made multiple trips to Disney World, intimating that Notarnicola was some sort of a child molester.  Notarnicola claims that his family owns a time share in the area and that is the reason why he and his family make

multiple trips to Disney World, not that he is a child molester.

Thereafter, Boyett interviewed other employees, including Joseph Tamburelli. Boyett arrived at the Proving Grounds on February 17, 2011 to perform "sensitivity training" but also interviewed other laborers regarding Notarnicola. Boyett informed Brown that none of the laborers supported Notarnicola's claim of harassment. Notarnicola in February 2011, provided detailed information regarding his disability and provided authorization for Johnson Controls to obtain his medical information. Notarnicola was released to return to work on March 10, 2011 by Dr. T. Ramirez. Boyett also conferred with Notarnicola's treating physician, Dr. Howard Schubiner, who informed Boyett that Notarnicola was fit to return to work.

On March 9, 2011, Brown met with Boyett, Stephens and Bob Kauffman, Stephen's manager, where the three tried to convince Brown that Notarnicola had said, "I will kill anyone who calls me a child molester," but Brown refused to do so. On March 10, 2011, Notarnicola received written notice from Johnson Controls that his employment was terminated due to misconduct (verbal threats) in violation of Johnson Controls' Workplace Violence Policy.

This matter is before the Court on Johnson Controls' Motion for Summary Judgment. A response and reply have been filed and a hearing held on the matter.

## II.    ANALYSIS

### A.     Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23.  A

court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**B.     Disability Discrimination Claims-Termination (Counts II and VI)**

**1.     McDonnell Douglas Burden Shifting**

Defendant argues that Plaintiff cannot meet the "but for" element in a *prima facie* disability claim under the ADA or the PWDCRA, citing a three-element *prima facie* test set forth in *Frengler v. GM,* 482 Fed. Appx. 975, 976 (6th Cir. June 7, 2012)(unpublished)("To state a claim under the ADA, the plaintiff must establish that (1) he is disabled, (2) he is qualified to perform the job requirements with or without reasonable accommodation, and (3) he would not have been discharged but for his disability.").

Plaintiff responds that Defendant stated the wrong test and that a five element test should be applied where a plaintiff must demonstrate that: 1) he is disabled; 2) he is otherwise qualified for the position, with or without accommodation, 3) he suffered an adverse employment action; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open or the individual was replaced, citing *Whitfield v. Tennessee,* 639 F.3d 253, 258-59 (6th Cir. 2011).

Without direct evidence of disability discrimination, the burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411

8

U.S. 792 (1972) is applicable under the ADA and Michigan's PWDCRA.  *Hedrick v. Western Reserve Care System,* 355 F.3d 444, 453 (6th Cir. 2004); *Peden v. City of Detroit,* 470 Mich. 195, 204-05 (2004); *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 634 n.3 (6th Cir. 1998).   The ADA prohibits discrimination against a qualified individual "on the basis of disability."  42 U.S.C. § 12112(a).[1]  In an *en banc* decision analyzing the pre-2009 "because of" version of the ADA, the Sixth Circuit held the standard in an ADA discrimination claim is a "but for" standard.  *Lewis v. Humboldt Acquisition Corp., Inc.,* 681 F.3d 312, 321 (6th Cir. 2012)(*en banc*).  In analyzing the new version, the Sixth Circuit has noted that its prior reasoning in pre-2008 decisions with respect to decision-maker knowledge is not affected by the change in the language of the Act from prohibiting discrimination "because of" disability to discrimination "on the basis" of disability.  *Niles v. Gibaudan Flavors Corp.,* 521 Fed. Appx. 365, 368 n.3 (6th Cir. Feb. 13, 2013)(unpublished); *see also, Hildebrand v. Dollar General Corp.,* 2013 WL 3761291 at *6 n.10 (M.D. Tenn. Jul. 16, 2013)(collecting cases).

The issue then is what is the proper analysis of an ADA *prima facie* claim–the three-element or five-element test.  This Court's review of recent Sixth Circuit cases

---

[1] The ADA Amendments Act of 2008 became effective January 1, 2009.  Prior to this date, the ADA prohibited discrimination "because of" an individual's disability.  The 2008 amendments changed the language prohibiting discrimination "on the basis" of disability.

shows that both tests have been used by different panels. *See White v. Standard Ins. Co.,* 529 Fed. Appx. 547,  (6th Cir. Jun. 28, 2013)(unpublished) and *Niles,* 521 Fed. Appx. at 371 (setting forth the five-element *prima facie* test). *But see, Frengler,* 482 Fed. Appx. at 976 (setting forth the three-element *prima facie* test).

Before and after the *Lewis en banc* decision, there still appears to be confusion as to the proper *prima facie* case test under the ADA.  The Sixth Circuit addressed this issue in *Whitfield , supra.*  The *Whitfield* panel noted that the three-element test, called the *Mahon* (*Mahon v. Crowell,* 295 F.3d 585 (6th Cir. 2002)) formulation for a *prima facie* case, is "clearly inconsistent with the five-element test" described in *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996).  *Whitfield,* 639 F.3d at 259. The Sixth Circuit found the five-element test in *Monette* is the "proper test" in an employment discrimination claim under the ADA.  *Id.*  The Sixth Circuited found that the three-element test is not used in the context of establishing a *prima facie* case, but in the context of what is required for *recovery* under the ADA in the pretext context. *Id.* at 260-61.  The five-element test set forth in *Monette* was adopted by the *Whitfield* panel to harmonize various panel decisions to establish a *prima facie* case of employment discrimination under the ADA.  *Id.*  The *Lewis en banc* decision did not set forth the framework on how an ADA *prima facie* discrimination claim should be analyzed, but only addressed the "but for" test in the context of jury instructions as to

10

causation. *Lewis,* 681 F.3d at 313-14. The *Whitfield* analysis stands as to how the appropriate ADA *prima facie* claim should be analyzed.

This Court will analyze the instant ADA claim using the five-element *prima facie* case, with the burden then shifting to the defendant to proffer a non-discriminatory legitimate reason. It is at the pretext stage where the plaintiff will then need to show the "but for" test set forth in *Lewis*. *See Wright v. Memphis Light, Gas & Water Div.,* 2014 WL 88504, *5 (6th Cir. Mar. 6, 2014)(Using the "but for" test at the pretext stage of the *McDonnell Douglas* burden shifting analysis.).

### 2.   *Prima Facie* **Case**

As noted above, the five elements Plaintiff is required to establish a *prima facie* case are:  1) he is disabled; 2) he is otherwise qualified for the position, with or without accommodation, 3) he suffered an adverse employment action; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open or the individual was replaced. *Whitfield v. Tennessee,* 639 F.3d at 258-59.

Plaintiff notes in his response brief that Defendant apparently does not challenge the five elements to establish a *prima facie* case because its motion did not discuss these five elements. However, in Defendant's reply brief, it appears it is challenging the fifth element–whether the position remained open or the individual

was replaced.  Defendant did not raise this argument or fact in its initial brief since it did not cite the five-element *prima facie* test.  It is well established that a reply brief is not the proper place to raise new arguments or facts.  *See United States v. Carson,* 560 F.3d 566, 587 (6th Cir. 2009); *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008).  A reply brief is a response to arguments made in the response brief; it does not provide the moving party with a new opportunity to present yet another issue for the court's consideration. *Scottsdale,* 513 F.3d at 553.  A non-moving party ordinarily has no right to respond to the reply brief and so as a matter of litigation fairness and procedure, such issues are considered waived.  *Id.*

As the movant, Defendant had the initial burden to cite to particular parts of the record to support its argument so that the non-moving party can properly respond. Defendant did not do so, but instead argued the "but for" element which is correctly analyzed in the pretext stage.  Plaintiff presumed Defendant did not challenge this element, or any of the five elements to establish a *prima facie* case.  (Resp. Br. at 21, "Defendant apparently does not challenge Plaintiff's ability to satisfy each of these elements.")  The Court considers Defendant's failure to initially argue the fifth element–whether the position remained open or the individual was replaced–waived. Therefore, Plaintiff has established a *prima facie* case for purposes of this summary judgment motion.  Fed. R. Civ. P. 56(c) (The court may consider a fact undisputed for

12

purposes of the motion if a party fails to properly support an assertion of fact.).

### 3.   Legitimate Reason/Pretext

Defendant argues that its reason for terminating Plaintiff was for violating its Workforce Violence Policy because of his behavior at the January 19, 2011 meeting where Plaintiff used the term "kill" and banged his head on the door.  Defendant claims that Plaintiff cannot establish pretext since Plaintiff cannot show that the reason was not Defendant's "honest belief" that Plaintiff's conduct on January 19, 2011 violated the Workplace Violence Policy.  Defendant cites Plaintiff's psychiatrist who considered Plaintiff a danger to himself and others shortly after the January incident, and although he signed a release for Plaintiff to return to work, he testified that he was not sure Plaintiff was safe to return to work.  (Ramirez Dep., 37-38) Defendant also argues that Plaintiff has no evidence that Defendant's articulated reasons were not the true reasons, or that Plaintiff's disability was the "but for" cause of Defendant's reason to terminate Plaintiff.

Plaintiff responds that the evidence of pretext is compelling.  Although Defendant claims Plaintiff said on January 19, 2011 that he would "kill them if they keep messing with me," no one involved in the meeting heard Plaintiff say that phrase. Boyett admitted in her deposition that she did not hear Plaintiff's comment. Testimony shows that because of Plaintiff's disability, his words were unintelligible

and that Brown and Stephens met afterward to try to piece together what Plaintiff was attempting to communicate. Brown and Stephens agreed Plaintiff was not threatening, but instead was trying to express his intense distaste for people who hurt children and was not threatening his co-workers. (Stephens Dep., pp. 155-56) Plaintiff states he was merely trying to explain why it was hurtful to be called a child molester. Plaintiff argues since he had not violated the Workplace Violence Policy, his termination based on such a violation was pretext.

A plaintiff may demonstrate that an employer's proffered legitimate reason for an adverse employment action is pretextual on any of three grounds: 1) by showing that the reason has no basis in fact; 2) by showing that the reason did not actually motivate the employer's action; or 3) by showing that the reason was insufficient to motivate the action. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). The plaintiff must prove pretext under the "but for" causation standard as set forth in *Lewis, supra. Lewis,* 681 F.3d at 321; *Hildebrand v. Dollar General Corp.,* 2013 WL 3761291, *6 (M.D. Tenn. Jul. 16, 2013).

In this case, Plaintiff has submitted sufficient evidence to create a genuine issue of material fact that Defendant's reason for termination was pretext. Plaintiff submitted the testimony of Stephens and Boyett that they did not expressly hear Plaintiff saying he would "kill" anyone. In addition, in light of Plaintiff's disability,

he is unable to clearly articulate his thoughts and feelings.  As argued by Plaintiff, the trier of fact may view Plaintiff's actions and statements at the January 2011 meeting as one of frustration as to what was said against him and because he is unable to articulate his feelings.  Stephens and Brown testified he was not a threat to others. There exist a genuine issue of material fact that Defendant's reason in terminating Plaintiff was because he violated the Workplace Violence Policy.

The Court finds that there are genuine issues of material fact that "but for" Plaintiff's disability, he would not have been terminated.  There is evidence that Boyett, the HR manager, despite receiving complaints about how Plaintiff was being treated by his co-workers and supervisors, identified Plaintiff as the problem employee.  Boyett was not physically present during the January 2011 meeting, but was present via speaker phone.  (Brown Dep., p. 168) The January 2011 meeting was to discuss accommodations for Plaintiff, but instead appeared to have turned into a meeting where Plaintiff had to explain statements he made six week prior about why people were calling him a child molester.  (Brown Dep., pp. 173, 179-80) Evidence has been submitted that Brown, the Union representative, was excluded from a January 21, 2011 telephone call regarding Notarnicola involving Boyett, Stephens and Tamburelli.  (Tamburelli Dep., p. 15; Brown Dep., p. 155-57) Brown testified that he was in contact with Boyett in February 2011 where she indicated to him Notarnicola

15

would be reinstated to work.  (Brown Dep., pp. 234-36)  The Threat Assessment commissioned by Defendant from an outside agency did not bar Notarnicola from returning to work.  (Mardigian Dep., pp. 55-57)

Based on the arguments and evidence submitted by the parties, the Court finds Plaintiff has presented sufficient evidence to defeat summary judgment that Defendant's reason for terminating Plaintiff's employment was mere pretext and that "but for" Plaintiff's disability, he would not have been terminated.  Defendant's Motion for Summary Judgment as to Plaintiff's disability discrimination claim based on his termination is denied.

## B.    Failure to Accommodate (Count I and V)

Defendant argues that Plaintiff did not request any accommodations prior to the January 19, 2011 incident and therefore his failure to accommodate claims must be dismissed.  (Notarnicola Dep., pp. 119-20)  Plaintiff did not respond to Defendant's argument in his response.

The ADA provides that employers may not "discriminate against a qualified individual on the basis of disability" which includes "not making reasonable accommodations" for disabled employees.   42 U.S.C. § 12112(a), (b)(5)(A). Michigan's PWDCRA substantially mirrors the ADA.  M.C.L.A. § 37.1102(1)-(2). The claims under both statutes are generally analyzed identically.  *Cotter v. Ajilon*

16

*Servs., Inc.,* 287 F.3d 593, 597 (6th Cir. 2002). To make a *prima facie* case of disability discrimination based on accommodation, a plaintiff must establish that 1) he is an individual with a disability; 2) who was otherwise qualified to perform the job's requirements, with or without reasonable accommodation; and 3) who was discriminated against solely because of the disability. *Spees v. James Marine, Inc.,* 617 F.3d 380, 395 (6th Cir. 2010).

Because Plaintiff failed to respond to Defendant's argument, summary judgment in Defendant's favor must be granted. See Fed. R. Civ. P. 56(e) (If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion or grant summary judgment if the motion is properly supported.). Defendant, having supported its motion as to this failure to accommodate claim, there is no factual dispute that Plaintiff did not seek accommodation because of his disability from Defendant. Summary judgment is granted as to the failure to accommodate claims in Counts I and V.

### C.    Hostile Work Environment Claims (Counts III and VII)

Defendant asserts that Plaintiff is unable to establish a hostile work environment claim since he did not hear the derogatory statements made by his co-workers and supervisors. Plaintiff responds that the evidence shows Plaintiff was

constantly harassed by his co-workers and supervisors and that because of his disability, he is unable to articulate what others said about him or remember the statements.

In a hostile work environment claim, a plaintiff must show that his workplace "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); *Kuhn v. Washtenaw County,* 709 F.3d 612, 626-27 (6th Cir. 2013). The PWDCRA creates a cause of action of hostile work environment on the basis of disability harassment and borrows federal law to analyze a claim. *Smoyer v. Dep't of Corr.,* 2001 WL 1512064 * 6 (Mich. App. Nov. 27, 2001). Under the ADA, a plaintiff must establish a *prima facie* case of discrimination based on a hostile environment  by showing that he:  1) was in a protected class; 2) was subject to unwelcomed harassment; 3) the harassment was based on his status as a protected individual; 4) the harassment unreasonably interfered with the plaintiff's work performance by creating an environment that intimidating, hostile and offensive; and 5) the employer was liable for the harassing conduct. *Plautz v. Potter,* 156 Fed. Appx. 812, 818 (6th Cir. Dec. 21, 2005); *Spence v. Donahoe,* 515 F3d. Appx. 561, 571 (6th Cir. Feb. 21, 2013); *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 706 (6th Cir.

18

2007).   A court must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance. *Burnett v. Tyco Corp.,* 203 F.3d 980, 982 (6th Cir. 2000).  The question of whether harassment is severe or pervasive is a question of fact. *Jordan v. City of Cleveland,* 464 F.3d 584, 597 (6th Cir. 2006).

Defendant does not argue in its brief that Plaintiff was not subjected to various harassment conduct by its managers, supervisors and employees.  Defendant instead argues that by Plaintiff's own admissions, he did not hear the alleged harassment by Stephens or Jackson, nor did he tell anyone about the alleged harassment.  (Motion, pp. 21-22)

Plaintiff responds that there are many instances in the record showing that Plaintiff was continually harassed by his supervisors and co-workers.  Plaintiff's co-workers and union officials were appalled about the ongoing harassment.  Plaintiff was constantly being called "stupid,"  "retarded," and "dumb ass."  Plaintiff was also subject to insinuations that he was a child molester. Plaintiff became depressed and despondent, which ultimately led to his breakdown requiring a medical leave and psychiatric treatment.  Defendant was made aware of the harassment by others and Brown, the Union representative.

Based on the record submitted by the parties, the Court finds that Plaintiff has

stated a *prima facie* case of harassment or hostile work environment to proceed to a trial. Defendant's claim that Plaintiff admitted that he did not hear these statements does not support summary judgment. Several co-workers reported that they saw and heard the supervisors demean and insult Plaintiff calling him "retard, fucking retard, dumb ass, and stupid." (Resp., p. 3; Pauliot Dep., pp. 45-47; Zakoor Dep., pp. 20-21; Romba Dep., pp. 15-16; Brown Dep., pp. 44-45, 77-78) Plaintiff's co-workers indicated no other laborers were subjected to this treatment and it was understood that Plaintiff was singled out because he was disabled. (Pauliot Dep., pp. 45-47; Romba Dep., pp. 15-16; Hayes Dep., p. 17; Zakoor Dep., pp. 20, 21; Brown Dep., pp. 44-45; 77-78)

Plaintiff testified he could not recall the exact words used to insult him, but did testify that he was bullied, demoralized, treated differently and was subject to insinuations that he was a child molester. There is no dispute in this case that Plaintiff's disability makes word retrieval and abstract thinking difficult. (Schubiner Dep., pp. 30-33; Ramirez Dep., p. 68; Romba Dep., p. 15) Plaintiff's testimony that he was harassed was corroborated by his co-workers' statements that he was called insulting names daily. Defendant does not dispute that it knew of the harassment suffered by Plaintiff, in light of the testimony that Plaintiff's supervisors were the individuals harassing Plaintiff. Brown, the Union representative, contacted Boyett,

the HR manager about the harassment. (Brown Dep., pp. 28-29) Defendant's Motion

for Summary Judgment on Plaintiff's harassment or hostile work environment claims

is denied.

### D.    Retaliation Claims (Counts IV and VIII)

Defendant moves for summary judgment on Plaintiff's retaliation claims

asserting that Plaintiff cannot show causation or pretext. Plaintiff responds that he has

easily met his burden.

The elements of a *prima facie* case of retaliation claims under the ADA and the

PWDCRA retaliation claims are the same: 1) that plaintiff engaged in an activity

protected; 2) that the defendant knew of this exercise of plaintiff's protected rights;

3) that defendant consequently took an employment action adverse to plaintiff; and

4) that there is a causal connection between the protected activity and the adverse

employment action. *Steward v. New Chrysler,* 415 Fed. Appx. 632, 643-44 (6th Cir.

Feb. 4, 2011); *Blizzard v. Marion Tech. College,* 698 F.3d 275, 288 (6th Cir. 2012).

Once a *prima facie* retaliation claim is established, the burden shifts to the defendant

to articulate some legitimate, nondiscriminatory reason for its action. *Spengler v.

Worthington Cylinders,* 615 F.3d 481, 492 (6th Cir. 2010). The burden then shifts

back to the plaintiff to show the stated reasons were mere pretext to mask retaliation.

*Id.*

Protected activities include:  opposition to any unlawful employment practice, or, making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing in connection with an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  Causation can be proven indirectly through circumstantial evidence such as suspicious timing. *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523, 525 (6th Cir. 2008).  Temporal proximity between an assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal connection element of a retaliation claim where an adverse employment action occurs very close in time after an employer learns of a protected activity. *Id*. at 525.  Where the nexus is not "very close," the Sixth Circuit has declined to find a causal connection based on timing alone. *Id.* at 523.  In such a case, the plaintiff must proffer additional evidence of retaliatory conduct to establish a causal connection between the protected activity and the adverse employment action. *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 364 (6th Cir. 2001).  A combination of evidence may include other employees' fear of retaliation, repeated comments regarding discipline, atmosphere where a plaintiff's activities were scrutinized more carefully than those of comparably situated employees, both black and white, more unwarranted criticism of plaintiff's work, and more frequent disciplinary writeups of plaintiff for trivial matters. *Id.*

Based on the evidence submitted by both parties, the Court finds that Plaintiff

22

has met his burden to show a *prima facie* case of retaliation.  Regarding Defendant's claim that Plaintiff fails to show causation, the fourth element, the Court finds that Plaintiff has sufficiently shown causation.  Brown filed a complaint of disability harassment/discrimination on behalf of Plaintiff on December 7, 2010 with Boyett.  Plaintiff has shown sufficient facts that Boyett did not properly investigate the complaint, but instead painted Plaintiff as a problem employee.  This is evidenced by how the January 19, 2011 meeting was conducted as previously discussed.  As to the pretext issue, for the same reasons set forth above, the Court finds genuine issue of material fact remains that Defendant's reason for terminating Plaintiff for violating the Work Violence Policy was not the real reason why Plaintiff was terminated.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Johnson Controls Incorporated's Motion for Summary Judgment **(Doc. No. 21)** is GRANTED IN PART AND DENIED IN PART as more fully set forth above.

IT IS ORDERED that the Violation of the ADA Disability Discrimination-Failure to Accommodate (Count I) and Violation of the PWDCRA, Disability Discrimination-Failure to Accommodate (Count V) are DISMISSED with prejudice.

IT IS FURTHER ORDERED that the following counts remain: Violation of the

ADA, Disability Discrimination-Termination (Count II); Violation of the ADA,

Disability Discrimination-Hostile Work Environment (Count III); Violation of the

ADA, Disability Discrimination-Retaliation (Count IV); Violation of the PWDCRA,

Disability Discrimination-Termination (Count VI); Violation of the PWDCRA,

Disability Discrimination-Hostile Work Environment (Count VII); and, Violation of

the PWDCRA, Discrimination-Retaliation (Count VII).

IT IS FURTHER ORDERED that the following schedule governs this matter:

Final Pretrial Conference Date: **May 19, 2014, 2:30 p.m.**
All clients and representatives with authority to settle must appear.

The proposed Joint Final Pretrial Order pursuant to LR 16.2
must be submitted by: **May 12, 2014**

Trial Date: **June 24, 2014, 9:00 a.m.**


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 28, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of
record on March 28, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

24